```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

SYLVIA C. SIMMONS,

                    Plaintiff,           MEMORANDUM & ORDER
                                         20-CV-1066(EK)(SJB)
            -against-

NATIONSTAR MORTGAGE, et al.,

                    Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Sylvia C. Simmons filed this action *pro se*, alleging that she was the victim of a scheme by the Defendants to evict her from her cooperative apartment. Her first complaint purported to bring civil claims under various criminal statutes. On March 25, 2020, the Court granted Plaintiff's *in forma pauperis* application, but dismissed the complaint with leave to amend. ECF No. 5. Plaintiff has now filed an amended complaint.[1] She asserts claims under 18 U.S.C. § 1344 (Bank Fraud) and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962 et seq. *See* Am. Compl. at 7-

---

[1] Plaintiff actually filed two amended complaints on November 30, 2020, that were mostly identical. One of these is signed; the other is not. The Court deems the signed amended complaint ("Am. Compl.") to be the operative pleading and directs the Clerk of Court to strike the unsigned complaint. *See* Fed. R. Civ. P. 11(a) ("[E]very pleading . . . must be signed by . . . a party personally if the party is unrepresented."); *Aljarah v. Citigroup Glob. Mkt.*, No. 16-CV-812G, 2019 WL 1642442, at *7 (W.D.N.Y. Apr. 16, 2019) ("Rule 11 requires striking an unsigned paper filed with the Court.").

8.² For the reasons set forth below, the Court dismisses the amended complaint.

## I. Background

Plaintiff is a resident of Queens, New York. Defendants are Franklin First Financial, Ltd. ("Franklin First"); the law firm of Frenkel Lambert Weiss Weissman & Gordon, LLP ("Frenkel"); Bank of America, N.A. ("Bank of America"); 175-20 Wexford Terrace Owners, Inc. ("Wexford") (her co-op association); Northern Management LLC ("Northern Management"); Nationstar Mortgage LLC ("Nationstar"), the successor in interest to Seterus, Inc. ("Seterus"); and the Federal National Mortgage Association ("Fannie Mae"). Plaintiff claims that the Defendants "knowingly participated in a scheme to defraud [Plaintiff] of her 517 shares in the cooperative corporation known as the Wexford Terrace Owners, Inc." Am. Compl. at 9. The following facts are alleged in the amended complaint, unless otherwise noted, and assumed to be true for current purposes.

The events began "[s]ometime in . . . 2006," when Plaintiff "was approached by Franklin First[,] offering her a loan on her cooperative apartment at 175-20 Wexford Terrace."

---

² Because the amended complaint is not paginated, the Court refers to the page numbers assigned by the CM/ECF docketing system.

*Id.* at 11.  Plaintiff held 517 shares in the Wexford Terrace Owners association (the cooperative association for the building) and was party to a proprietary lease.  *Id.*  Despite the fact that Plaintiff's name and signature appear in multiple locations on the promissory note (the "Note") for the loan dated January 26, 2007, *see* Am. Compl., Ex. A at 38-42, the Amended Complaint asserts that Plaintiff "believed . . . that she did not sign the documents and [that] her name on the documents [was] forged."  Am. Compl. at 11-12.  Other than this qualified recollection, the Amended Complaint includes no additional factual content to suggest that any loan document was forged.

The Note indicates that the loan was to be secured by the shares Plaintiff owned in the co-op, and Franklin First ultimately did perfect its security interest in those shares.  *See* Am. Compl., Ex. A at 38-50; Ex. B at 51 (New York City Registrar Recording and Endorsement).  The Complaint also alleges that Plaintiff never received the proceeds of the loan.  Am. Compl. at 11.  Thus, she claims, the loan from Franklin First was the product of fraud at inception.

In 2012, Franklin First assigned the loan to Bank of America, as indicated in an amended UCC financing statement filed by the law firm Frenkel.  *Id.* at 12; Ex. E at 75-76.  In 2013, Wexford (the co-op association) sued Plaintiff in New York Civil Court for "maintenance arrears."  Am. Compl., Ex. D at 67-

3

73. In June 2016, Plaintiff "was contacted by Seterus" — a loan-servicing company — "and told her apartment was going to be sold in a foreclosure sale" because of non-payment of the mortgage. *Id.* at 13; *see also* Ex. G at 80-81.

A non-judicial foreclosure sale did occur some time thereafter. *See generally* Am. Compl. Ex. G.  In a December 6, 2018 letter to Elizabeth Diamond of the New York State Department of Financial Services, Seterus wrote that the loan had been transferred again, and that Fannie Mae became "the beneficiary of the lien on the property." *Id.* at 80.  Seterus went on to indicate that the loan had been delinquent since August 2009, that the loan had been "referred for foreclosure action on December 9, 2015," and the co-op interest had been "sold at a foreclosure sale on July 1, 2016." *Id.*

In 2018, Plaintiff filed a lawsuit in New York State Supreme Court, Queens County, against the purchaser in the non-judicial foreclosure sale, as well as Frenkel, Northern Management, and Wexford.  *See* Am. Compl., Ex. I at 96-98 (Decision by Justice Laurence L. Love dated Feb. 14, 2019, *Simmons v. Plotch, et al.*, Index No. 5371/18).

In the state Supreme Court action, Plaintiff alleged that these defendants conspired to improperly transfer her co-op shares and cancel her proprietary lease.  *Id.*  The state Supreme Court, however, dismissed the action on February 14, 2019. *Id.*

4

Justice Love held that the "defendants . . . submitted proof that proper procedures were observed regarding the underlying non-judicial foreclosure." *Id.* at 97. This proof, he noted, included "a copy of a breach letter dated September 17, 2009, informing plaintiff of her default and Bank of America's intention to accelerate the debt" and "an affidavit of service showing that plaintiff was served with notice of the auction." *Id.* Contrary to Plaintiff's position in this case, *see* Am. Compl. at 11-12, 19-20, Justice Love specifically noted "that plaintiff does not deny entering into a Note and security agreement with Franklin First Financial, Ltd, receiving the funds described in the Note, defaulting on said Note, receiving the September 17, 2009 acceleration letter, nor receiving notice of the non-judicial foreclosure." *Id.* at 98. "Instead," he went on, Ms. Simmons "objects to the form of the documents submitted." *Id.*

Plaintiff then filed another state-court lawsuit in 2019 seeking return of the 517 shares. *See* Am. Compl. at 15-17; Ex. J. That action is currently pending against Nationstar (the other defendants have since been dismissed). Am. Compl. at 15-17; Ex. J.

In the action before this Court, Plaintiff disputes the validity of the foreclosure sale, in addition to the validity of the Note itself. She claims that because "Seterus

5

makes no reference to the 517 collateral shares" and instead refers to a "'lien on the property located at 17520 Wexford, Apart. 14S, which secured the . . . Note[,]' Seterus does not seem to realize that coops are not real property and that it is the 517 collateral shares that were in dispute." Am. Compl. at 18-19. Given this purported mistake, Plaintiff alleges that it is "unlikely that Seterus undertook any non-judicial foreclosure procedures or even contacted Fannie Mae to see if . . . [it] held the shares." *Id*.

## II. Legal Standard

Where, as here, a plaintiff proceeds *pro se*, courts construe a complaint with "special solicitude" and interpret it to raise the "strongest arguments that [it] suggest[s]." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006). Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), district courts are to dismiss an *in forma pauperis* complaint that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The "special solicitude" in *pro se* cases "has its limits"; *pro se* pleadings must still plead "enough facts to state a claim to relief that is plausible on its face." *Triestman*, 470 F.3d at 474-76. A claim is facially plausible if

6

the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* at 679. But it need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* at 678. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief.

The Court "has the power to dismiss a complaint *sua sponte* for failure to state a claim on which relief can be granted." *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991).

### III. Discussion

**A.   Bank Fraud**

Plaintiff alleges that Defendants committed bank fraud pursuant to 18 U.S.C. § 1344. 18 U.S.C. § 1344 is a criminal statute that creates no private right of action. *E.g.*, *Edmonds v. Seavey*, No. 08-CV-5646, 2009 WL 2949757, at *6 n.8 (S.D.N.Y. Sept. 15, 2009) ("There is no private cause of action under 18 U.S.C. § 1344."). Therefore, this claim is dismissed with prejudice.

**B.     RICO**

Plaintiff also alleges that the Defendants violated RICO through a conspiracy to deprive her of her property. For the reasons set forth below, Plaintiff's RICO claims against all parties are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

To establish a civil RICO claim, a plaintiff must plausibly allege: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quotation marks omitted). The "pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Id.* Here, Plaintiff alleges that Defendants committed — as predicate acts — mail fraud, wire fraud and the collection of an unlawful debt. Am. Compl. at 21.

Plaintiff alleges the existence of an enterprise only in conclusory terms. She identifies the Defendants' roles in the various transfers of the loan, but does not plausibly allege the existence of an ongoing "association-in-fact" among the various Defendants with the "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). At most, she

8

alleges the Defendants' "ongoing business relationships" with one another, which is insufficient to establish a RICO enterprise. *Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014).

Moreover, Plaintiff does not plausibly allege the requisite predicate acts. To invoke mail or wire fraud as predicates under RICO, a plaintiff must assert: "(1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Estate of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084, 2017 WL 1194464, at *8 (E.D.N.Y. Mar. 30, 2017) (quotations omitted). These allegations are subject to the heightened pleading standards of Rule 9(b), which require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004) (plaintiffs failed to plead predicate RICO acts with sufficient particularity). Thus, to state a RICO claim, a plaintiff must "delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme." *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 808 (E.D.N.Y. 2003).

9

Plaintiff's allegations do not plausibly describe a mail or wire fraud scheme. Plaintiff alleges, based solely on her own qualified recollection, that she "believe[s] . . . she did not sign the documents and [that] her name on the documents [was] forged." Am. Compl. at 11-12. Given that Plaintiff's allegation of fraud is predicated almost entirely on the alleged forgery of her signature on the operative loan documents, it is incumbent on her to allege that fact without the qualification as to her "belief." Except in limited circumstances not present here, "fraud pleadings generally cannot be based on . . . belief." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988).[3] Put differently, Plaintiff's "belief" does not amount to a positive statement that fraud has occurred. On that basis, therefore, she may not come forward with such "equivocal allegations, and compel the [Defendants] to undergo the expense and ordeal of a full trial." *Howard v. Koch*, 575 F. Supp. 1299, 1304 (E.D.N.Y. 1982).

Thus, Plaintiff's forgery allegation is insufficiently definite on its face. And it is rendered additionally implausible because of Plaintiff's inconsistency on this

---

[3] *See also Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 288 (S.D.N.Y. 1998) (fraud pleadings generally cannot be based on information and belief); *Estate of Izzo*, 2017 WL 1194464, at *9 (same); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (plaintiffs pleading fraud cannot base their claims on "speculation").

10

question. As noted above, Justice Love found that Plaintiff "does not deny entering into a Note and security agreement with Franklin First" – contrary to her position in this case. Am. Compl., Ex. I at 98 (Decision by Justice Laurence L. Love dated Feb. 14, 2019, *Simmons v. Plotch, et al.*, Index No. 5371/18). This Court can take judicial notice of that finding. *E.g., A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 387 (S.D.N.Y. 1996) (courts may take judicial notice of adjudicative facts and judgments issued by other courts).

      Plaintiff's complaint fails to meet the plausibility and particularity standards for other reasons as well. She does not assert with specificity how the Defendants neglected to "observe proper procedures," beyond her generic assertion that that the procedures they observed were unlawful. Nor does she set out any specific misrepresentation with particularity. Again, she relies only on her unsubstantiated sense that the Defendants failed to observe the required legal formalities in foreclosure. *See, e.g.*, Am. Compl. at 19 (Plaintiff alleges that it is "unlikely that Seterus undertook any non-judicial foreclosure procedures or even contacted Fannie Mae to see if . . . [it] held the shares"). Without accompanying factual content and the requisite particularity, these allegations (concerning the validity of the loan and any default thereof) cannot support a predicate assertion of fraud.

11

Plaintiff's other alleged predicate act is the collection of an unlawful debt. To establish a RICO violation based on collection of unlawful debt, a plaintiff must show that "(1) the debt was unenforceable under state or federal usury laws; (2) the debt carried twice the enforceable interest rate; and (3) that the debt was incurred in connection with the defendants' business of lending money at a usurious rate." *Weisel v. Pischel*, 197 F.R.D. 231, 241 (E.D.N.Y. 2000); *see also* 18 U.S.C. § 1961(6) (defining "unlawful debt"). Under New York law, a loan to an individual with an annual interest rate higher than sixteen percent is unenforceable. *See* N.Y. General Obligations Law § 5-501(2); N.Y. Banking Law § 14-a(1).

Here, Plaintiff does not allege that the stated interest rate on her loan (6.375%) was usurious.[4] The Court therefore need not analyze the remaining elements of the purported RICO law violation predicated on a claim of unlawful debt. Plaintiff does not plausibly allege that Defendants attempted to collect an unlawful debt in violation of RICO.

---

[4] *See* Am. Compl., Ex A at 38. As set forth above, Plaintiff challenges the lawfulness of the loan on other grounds, such as whether she actually executed the loan documents. *See, e.g.*, Am. Compl. at 19. But these allegations fall short of alleging a plausible claim for the collection of unlawful debt for the same reason they fall short in the context of the fraud allegation — namely, because they lack sufficient factual content to be rendered plausible.

12

Plaintiff's RICO claim based on unlawful debt collection is also, therefore, dismissed for failure to state a claim.

## IV. Conclusion

This action, filed *in forma pauperis*, is dismissed for failure to state a claim upon which relief can be granted against each of the Defendants: Franklin First Financial, Ltd.; Frenkel Lambert Weiss Weissman & Gordon, LLP; Bank of America, N.A.; 175-20 Wexford Terrace Owners, Inc.; Northern Management LLC; Nationstar Mortgage LLC; and Federal National Mortgage Association. 28 U.S.C. § 1915(e)(2)(B). Plaintiff's cause of action alleged to arise under 18 U.S.C. § 1344 (Bank Fraud) is dismissed with prejudice.

The Court grants Plaintiff thirty days to amend her complaint to properly state a claim. If Plaintiff fails to plead sufficient facts in her second amended complaint, or if she fails to file a second amended complaint within thirty days, she will not have another opportunity to re-plead, and the Court will enter judgment.

The Clerk of Court is directed to strike the unsigned complaint at ECF No. 12.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   March 12, 2021
         Brooklyn, New York